958 So.2d 446 (2007)
Zsolt FODOR, Appellant,
v.
Robert W. GEISZLER and Joan E. Geiszler; and Zsuzsanna Fodor, Appellees.
No. 2D05-3861.
District Court of Appeal of Florida, Second District.
May 4, 2007.
Daniel B. Schuh, St. Petersburg, for Appellant.
John E. Conley, Clearwater, for Appellees Geiszler.
No appearance for Appellee Zsuzsanna Fodor.
*447 WALLACE, Judge.
Zsolt Fodor, a judgment debtor, appeals the trial court's final order that directed him  in his capacity as "surety" on a cash supersedeas bond  to pay certain post-judgment liabilities that he owed to Robert W. Geiszler and Joan E. Geiszler, the judgment creditors. We reverse the order for three reasons. First, because the supersedeas bond was a cash bond, Zsolt was never liable on it as a surety. Second, to the extent that Zsolt was liable on the supersedeas bond, his liability ended when the judgment that the bond secured was paid in full. Third, the sums that the trial court ordered Zsolt  in his capacity as "surety"  to pay to the Geiszlers were not included within the scope of the supersedeas bond.

I. THE FACTUAL BACKGROUND
A. The Prior Appeal
This is the second appearance of these parties before this court. We previously affirmed a money judgment in favor of the Geiszlers and against Zsolt and Zsuzsanna Fodor. See Fodor v. Geiszler, 888 So.2d 30 (Fla. 2d DCA 2004) (table decision). The amount of the judgment was $44,480.54. This amount was composed of $7546.65 in damages, $29,582.50 in attorney's fees, prejudgment interest of $1740.84, and $5610.55 in costs.
B. The Supersedeas Bond
In conjunction with their appeal from the judgment, the Fodors posted a cash supersedeas bond with the clerk of the trial court. The amount of the bond was $34,179.56. This amount was less than the amount required by Florida Rule of Appellate Procedure 9.310(b)(1). However, the parties agreed to the lesser amount because the Geiszlers' attorney held another $14,000 as security for the payment of the judgment. The condition of the bond provided "that if [the Fodors] shall pay or comply with the Orders on Appeal, in full, including costs, interest and attorney's fees awarded therein should the pending appeal be dismissed or the Orders on appeal be affirmed, then this bond shall be void; otherwise, to remain in full force and effect." Based on the parties' stipulation, the trial court entered an order approving the bond.
A review of the bond discloses that the word "surety" does not appear anywhere in it. In addition, neither Zsolt nor Zsuzsanna signed the bond. Instead, their attorney signed the document on their behalf as "Attorney for Defendants."[1]
C. The Proceedings in the Trial Court After the First Appeal
After the issuance of this court's mandate in the first appeal, the Geiszlers filed a motion in the trial court for the entry of an order directing the clerk of the court to disburse sufficient funds to pay the judgment in full. In December 2004, the trial court entered an order that directed the clerk to disburse the sum of $32,196.72 to the Geiszlers. This sum  less the $14,000 held by the Geiszlers' attorney  represented the balance then due on the judgment, including accrued interest. The trial court also directed the Geiszlers to file a satisfaction of the judgment that had been appealed upon receipt of payment from the clerk. Finally, the trial court ordered the clerk to refund to the Fodors the balance of the cash bond in the amount of *448 $1982.24.[2]
In addition to affirming the trial court's judgment on the first appeal, this court awarded prevailing party attorney's fees to the Geiszlers for the services of their attorney on the appeal. After the issuance of our mandate, the trial court set the amount of the Geiszlers' reasonable appellate attorney's fees at $8000. In addition, the trial court awarded the Geiszlers an additional $10,000 for collection efforts, plus $875 for expert witness fees. In January 2005, the trial court entered a judgment in favor of the Geiszlers and against the Fodors for $18,875, representing the total of these three amounts. Approximately six weeks later, the trial court entered another judgment taxing "Supplemental Costs" in the amount of $1445.82 in favor of the Geiszlers and against the Fodors. The Fodors have not sought review of either of the two judgments that were entered after the conclusion of the first appeal.
When the Fodors failed to pay these two judgments promptly, the Geiszlers moved for an order compelling the Fodors "to pay in full all attorney's fees, costs and interest awarded pursuant to the Final Judgement [sic] under the inherent conditions of the cash bond that [the Fodors] posted plus any additional fees and costs incurred by [the Geiszlers] resulting from their continued efforts to collect this debt." In June 2005, the trial court conducted a hearing on this motion. Zsolt attended the hearing. However, Zsuzsanna  who was apparently residing in Hungary at the time of the hearing  was not present. On June 16, 2005, the trial court entered an order finding:
[T]hat the Surety, Zsolt Fodor, is obligated under the Bond to pay the Judgment in Full, including costs, interest, fees and damages for delay to bring finality to this litigation, and that this Court has the power to enforce this Bond if necessary against the Surety by means [of] the holding[] of a contempt proceeding.
Based on this finding, the trial court ordered Zsolt, in his capacity as "Surety," "to pay the Judgment in Full, including all presently adjudicated costs, interest and attorney's fees in the amount of $20,330.82 [sic] by check made payable to [the Geiszlers'] counsel within fifteen (15) days of the date of this Order."[3] The trial court also ordered Zsolt, in his capacity as "Surety," "to deposit into the [Geiszlers'] Counsel's Trust Account, within fifteen (15) days of the date of this Order, an additional $3,992.54 which is [the Geiszlers'] estimate to resolve this matter in full, including fees, costs, and interest." Thus the additional amounts that the trial court ordered Zsolt to pay the Geiszlers in the June 16 order totaled $24,323.36. Finally, the trial court ordered:
[T]hat [the Geiszlers'] Counsel and the Surety, Mr. Fodor's, Counsel shall attempt to stipulate to the remaining attorney's fees, costs, and interest, once the above stated $24,323.36 has been deposited as herein stated, and set a hearing to resolve the remaining unliquidated fees, costs, interest and any additional damages for delay in this matter if a stipulation is unattainable, for which *449 amounts, including the costs of any further hearings on this matter, Zsolt Fodor shall remain responsible for under the terms and conditions of this supersedeas bond.
After the trial court denied his motion for rehearing, Zsolt filed this appeal from the June 16 order.

II. DISCUSSION
A party seeking review of a money judgment may obtain a stay pending review in accordance with Florida Rule of Appellate Procedure 9.310(b)(1):
If the order is a judgment solely for the payment of money, a party may obtain an automatic stay of execution pending review, without the necessity of a motion or order, by posting a good and sufficient bond equal to the principal amount of the judgment plus twice the statutory rate of interest on judgments on the total amount on which the party has an obligation to pay interest. Multiple parties having common liability may file a single bond satisfying the above criteria.
The purpose of conditioning a stay pending review on posting a bond is to ensure the payment to the judgment creditor of the full amount of the order on appeal, including interest, in the event the appeal is unsuccessful. See Wilson v. Woodward, 602 So.2d 545, 546 (Fla. 2d DCA 1991). For purposes of the rule, a "good and sufficient bond" is defined as "a bond with a principal and surety company authorized to do business in the State of Florida, or cash deposited in the circuit court clerk's office." Fla. R.App. P. 9.310(c)(1) (emphasis added). Thus there is no surety on a cash bond. A surety is "[a] person who is primarily liable for the payment of another's debt or the performance of another's obligation." Black's Law Dictionary 1482 (8th ed. 2004). The cash deposited in the clerk's office eliminates the need for a surety on the bond as security for the performance of the judgment debtor's obligation. Cf. Superior Garlic Int'l, Inc. v. E & A Produce Corp., 934 So.2d 484 (Fla. 3d DCA 2004) (describing a cash supersedeas bond and outlining the appropriate remedy for its enforcement).
The Fodors' cash supersedeas bond for the first appeal was approved by the trial court and filed in accordance with the applicable rule. The trial court's order erroneously compelled Zsolt to take action in his purported capacity as surety on the cash bond. Because the bond was a cash bond, Zsolt never had any liability on it as a surety. Furthermore, any liability that Zsolt may have had on the supersedeas bond ended when the monies on deposit with the clerk were disbursed to the Geiszlers. At that point, the judgment was paid in full and the bond's condition was satisfied. Finally, the trial court's order expanded the scope of the bond's coverage to require payment of additional amounts that were not included in the final judgment that was the subject of the first appeal. Here, the condition of the supersedeas bond limited its scope to the payment of "the Orders on Appeal, in full, including costs, interest and attorney's fees awarded therein." (Emphasis added.) In the order under review, the trial court erroneously directed Zsolt  as a "Surety"  to pay a variety of items that were not included within the scope of the bond. See City of Coral Gables v. Geary, 398 So.2d 479, 480-81 (Fla. 3d DCA 1981).
For these reasons, we reverse the order on appeal.
ALTENBERND and SALCINES, JJ., Concur.
NOTES
[1] The attorney who signed the bond for the Fodors does not represent them in this appeal.
[2] The trial court's disbursement order identified $1982.84 in "unearned interest" due to the Fodors but ordered a refund payment of only $1982.24. We assume that the sixty cents difference resulted from a scrivener's error.
[3] The $20,330.82 figure mentioned in the order is $10 more than the sum of the two amounts that the trial court had previously awarded to the Geiszlers as attorney's fees and costs.